Argued and submitted January 22, affirmed July 5, 2001

In the Matter of the Compensation of
Gary S. Fox, Claimant.

Gary S. FOX,
*Petitioner,*

*v.*

ROSS BROS. & COMPANY, INC.,
and SAIF Corporation,
*Respondents.*

99-01031; A109773

28 P3d 631

Michael Strooband argued the cause for petitioner. With him on the briefs was Bischoff, Strooband & Ousey, P.C.

James W. Moller argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.[*]

SCHUMAN, J.

---

[*] Schuman, J., *vice* Linder, J.

**SCHUMAN, J.**

An administrative law judge (ALJ) directed SAIF, claimant's employer's insurer, to pay claimant 51 percent unscheduled permanent partial disability (PPD) and a penalty against SAIF for unreasonably having failed to do so. The Workers' Compensation Board (Board) reversed, and claimant petitions for judicial review. We review for errors of law, ORS 656.298(7); ORS 183.482(8), and affirm.

Claimant compensably injured his back in February 1995. He became medically stationary in June 1996, and a determination order closed his claim and awarded him 38 percent PPD. On reconsideration, the award was reduced to 13 percent. Claimant sought review, and an ALJ increased his award to 51 percent. That award became final in September 1997.

SAIF, however, refused to pay the 51 percent award because, at the time the ALJ issued it, claimant was enrolled in an authorized training program (ATP). SAIF interpreted ORS 656.268(9) (1995) (hereinafter "subsection (9)") to allow suspension of PPD benefit payments to claimants while they were in such programs and to re-evaluate them after they finished.[1] Indeed, shortly after claimant finished the ATP, SAIF

---

[1] ORS 656.268(9) (1995) provided:

"If, after the determination made or notice of closure issued pursuant to this section, the worker becomes enrolled and actively engaged in training according to rules adopted pursuant to ORS 656.340 and 656.726, any permanent disability payments due under the determination or closure shall be suspended, and the worker shall receive temporary disability compensation while the worker is enrolled and actively engaged in the training. When the worker ceases to be enrolled and actively engaged in the training, the Department of Consumer and Business Services shall redetermine the claim pursuant to this section if the worker is medically stationary or if the worker's accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). The redetermination shall include the amount and duration of temporary total or temporary partial disability compensation. Permanent disability compensation shall be redetermined for unscheduled disability only. If the worker has returned to work or the worker's attending physician has released the worker to return to regular or modified employment, the insurer or self-insured employer may redetermine and close the claim under the same conditions as the issuance of a determination order by the Department of Consumer and Business Services. The redetermination or notice of closure is appealed in the same manner as are other determination orders or notices of closure under this section."

re-evaluated him and issued a notice of closure that reduced his PPD to 34 percent. SAIF paid that amount.

While claimant was enrolled in the ATP, he requested and received a hearing before an ALJ seeking to compel SAIF to pay the 51 percent award. He also sought attorney fees and a penalty against SAIF for unreasonably refusing to pay the award. The gist of claimant's argument was that subsection (9) did not authorize SAIF to suspend payment of a PPD award during the time claimant was in the ATP, if the PPD award resulted from an *appeal* of a determination or notice of closure as opposed to the determination or notice itself. Claimant made no reference to SAIF's obligation to continue paying at the 51 percent level *after* completion of the ATP, or to SAIF's authority to re-evaluate him. However, by the time the ALJ decided claimant's case, claimant *had* finished his ATP. The ALJ therefore held that "the issue of whether SAIF must commence payments while claimant is in the ATP is moot. The question must be resolved, however, as it is the underlying question to the other issues claimant has raised," *i.e.*, penalty and fees. Accordingly, in the process of deciding that SAIF *did* unreasonably refuse to pay PPD during the ATP, the ALJ also necessarily and explicitly decided that nothing in subsection (9) authorized this refusal. Subsection (9), according to the ALJ, authorized suspension of payments only if they were specified in a determination or notice of closure, not if they were specified in an order from an ALJ or from the Board on review of a determination or notice of closure. SAIF appealed to the Board. The Board agreed with the ALJ that the issue of whether SAIF was authorized to suspend PPD during the ATP was moot, but it reversed the ALJ on the penalty.[2] The Board concluded that, under some of its earlier decisions, SAIF's refusal to pay was reasonable. Claimant did not appeal that decision.

Shortly thereafter, claimant requested another hearing on SAIF's refusal to pay the 51 percent award. This

---

For purposes of this opinion, our citations to statutes in ORS chapter 656 are to the 1995 version. Although many of those statutes have since been amended, the amendments do not affect our analysis.

[2] The issue of whether the Board correctly determined that the claim was moot is not before us, and we express no opinion on it.

claim assertedly differed from the one litigated in the earlier proceeding because it focused on SAIF's claim processing decisions *after* completion of the ATP, where the first proceeding dealt only with issues relating to SAIF's *suspension* of benefits *during* the ATP. Claimant argued that subsection (9) did not authorize SAIF to disregard the final, valid 51 percent award in favor of the later 34 percent award. He requested payment of the 51 percent award and a penalty. SAIF responded that, first, claimant's cause was barred by claim preclusion, and, second, in any event, it was wrong on the merits. The ALJ held in favor of claimant on both issues: the claim was not precluded, and it was meritorious.

SAIF took the case to the Board. The Board agreed with the ALJ that the claim was not precluded but, on the merits, ruled that the 51 percent award was not enforceable. Claimant petitioned for judicial review. On review, claimant argues that subsection (9) did not permit the 34 percent award to "supersede and negate" the 51 percent award in the ALJ's order. SAIF counters that it does and that, in any event, the claim is barred by claim preclusion.

■    To resolve the issue raised by claimant's assignment of error we must interpret subsection (9). Our objective in statutory interpretation is to discern the intent of the legislature. To do so, we begin by examining the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Common words in the text of the statute are "given their plain, natural, and ordinary meaning." *Id.* at 611. The context of a statute includes "other provisions of the same statute and other related statutes." *Id.* If text and context clearly establish the legislature's intent, no further inquiry is necessary. *Id.*

Subsection (9), set out in note 1, used several Workers' Compensation Law terms of art. A "determination" is an order from DCBS closing a worker's claim and establishing his or her level of further compensation, if any. ORS 656.268(2), (5). A "notice of closure" is an order from an insurer that performs the same function. ORS 656.268(4). "Training" refers to vocational assistance of the kind claimant entered in this case—an ATP. Thus, the first sentence of

subsection (9) provided that an insurer should suspend payment of permanent disability benefits if the worker entered an ATP after the determination or notice of closure issued. The second sentence provided that, once the worker had completed the training, his or her degree of disability had to be redetermined. Each of those sentences specified that certain consequences follow on the occurrence of certain preconditions. In the first sentence, the event triggering the consequences is *enrollment* in an ATP after claim closure. The consequence that this event triggers is suspension of payments "due under the determination or closure" for the duration of the ATP. In the second sentence, the triggering event is *termination* of the ATP. The consequence is redetermination of the claim.

■ On review, claimant does not expressly argue that SAIF lacked authority to suspend payment of the 51 percent award while claimant was enrolled in the ATP. However, claimant's argument that the 34 percent award cannot supersede or negate the earlier 51 percent award is based on the premise that the 51 percent award was due when it became final during claimant's ATP and that SAIF had no authority to suspend payments. We must therefore begin by interpreting the first sentence of subsection (9) to determine whether SAIF properly suspended payment of the 51 percent award while claimant was enrolled in the ATP.

For us to interpret the first sentence of subsection (9) to mean that SAIF was not authorized to suspend payment of the 51 percent award, we would need to reason (as claimant did at the earlier proceeding) that the insurer can suspend only those payments that are "due under," or specified in, a "determination" or a "notice of closure," but not payments specified in an order from an ALJ or the Board following review of the determination or notice of closure. If such review occurs, any revised payments are "due under" the ALJ order or Board order, and subsection (9) does not permit suspension. By the same logic, relief due under a judgment would be the relief specified by the trial court and not the relief that an appellate court ultimately determines should have been specified under the facts as they existed at the time of trial.

We find this to be a strained and illogical reading of the statute. The plain language of due "under" in this context is not so narrow.

"Under" means "required by : in accordance with : bound by." *Webster's Third New Int'l Dictionary,* 2487 (unabridged ed 1993). Examples include such phrases as "under contract to deliver" and "rights under law." The determination or notice of closure described in subsection (9) generally confirmed that, at a particular time, the worker was medically stationary, and it also specified the amount of his or her permanent disability based on existing facts. ORS 656.268(1); ORS 656.268(2)(a); ORS 656.268(4)(a) and (b); ORS 656.268(5). ORS 656.268 also provided for multiple reviews of this determination, all based on the worker's status at the time of the original determination. ORS 656.268(4)(e), (5)(b), and (6)(f); ORS 656.319(4); ORS 656.283; ORS 656.289(3); ORS 656.295; ORS 656.298. An ALJ or Board order that contains a PPD award different from the one contained in the original determination or notice of closure sets the payment that should have been awarded in the original determination order or notice of closure in the first place. The 51 percent award issued by the ALJ in August 1997 set the amount that was due under (or in accordance with, or required by) the circumstances as they existed at the time the determination order was issued. The amounts that result from review of the original award all trace back to, or have their source, in the status of the claimant at the time that the original determination occurs. They are, therefore, "under" that original determination. Thus, the 51 percent award was due under the original determination order in this case, and subsection (9) authorized SAIF to suspend payments of that award.

■    SAIF also had authority under the second sentence of subsection (9) to redetermine claimant's claim. In *SAIF v. Coburn,* 159 Or App 413, 977 P2d 412, *rev den* 329 Or 527 (1999), a notice of closure awarded claimant 42 percent PPD, and it became final. After an ATP, the award was reduced to 19 percent. Claimant argued that his 42 percent award was final and could not be reduced. This court held that, "pursuant to ORS 656.268(9), there *must* be a reevaluation of the

worker's extent of disability upon completion of an ATP, even if the original award has become final." *Coburn*, 159 Or App at 417 (emphasis in original). *Accord SAIF v. Sweeney*, 115 Or App 506, 839 P2d 254 (1992), *modified on recons* 121 Or App 142, 144-45, 854 P2d 487 (1993) ("We adhere to that portion of our earlier opinion that holds that an employer may re-evaluate a permanent disability award after the completion of [an ATP]."). The only distinction between this case and *Coburn* or *Sweeney* is that here the final determination was an ALJ order, whereas in those cases a determination order or notice of closure became final without ALJ or Board review. As we have explained, that distinction is legally irrelevant.

Claimant also maintains that subsection (9) "does not state that awards in litigation orders (Board and ALJ decisions) shall be redetermined upon cessation of ATP. The statute only refers to determinations and notices of closure." That is not correct. The second sentence, the one governing redetermination, provided that DCBS "shall redetermine *the claim*" (emphasis added), not that DCBS shall redetermine the determination order or notice of closure. Thus, the phrase "due under the determination or closure" applied only to what could be suspended, not to what could be redetermined.

Finally, our interpretation of subsection (9) is consistent with evident legislative intent. This court has stated that "the legislature apparently recognized that the extent of a claimant's disability may change as a result of participation in a vocational rehabilitation program," and, when that happens, re-evaluation and possible reduction of the pretraining PPD are appropriate. *Sweeney*, 115 Or App at 511. Claimant's interpretation of the statute would preclude redetermination whenever a claimant began an ATP while the award in the determination order or notice of closure was in the process of being reviewed. He suggests no logical reason for such an outcome and we can conceive of none.

In the present case, the ALJ issued the 51 percent award, and the ALJ's order became final during claimant's participation in the ATP. When claimant completed the ATP on February 28, 1998, subsection (9) required redetermination of the claim. Because payment of the 51 percent award

was only "suspended" by operation of subsection (9), SAIF also had an obligation to pay the award once the ATP ended. That obligation, however, did not ripen until 30 days after the end of the suspension. OAR 436-060-0150. *See Sweeney,* 121 Or App at 145 (participation in an ATP tolls insurer's 30-day grace period). Because the new notice of closure issued on March 11, 1998, before SAIF was obligated to pay at the 51 percent award, the Board did not err in holding that claimant could not enforce the 51 percent award.[3]

Affirmed.

---

[3] Because we uphold the Board's decision, we do not find it necessary to address SAIF's cross-assignment concerning claim preclusion.